ISABEL DÍAZ and ADA BISINIA PASTRANA, a minor represented by her mother ISABEL DÍAZ, Petitioners, v. DISTRICT COURT OF HUMACAO, R. ARJONA SIACA, JUDGE, Respondent.

No. 1191.—Argued July 24, 1939.—Decided July 29, 1939.

410

*Burset & Pérez Pimentel* for petitioners.  *Antonio L. López*, for intervenor, defendant in the main suit.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Isabel Díaz and Ada Bisinia Pastrana, the latter a minor appearing through the former, who is her mother, appeared by their attorney and filed a petition for certiorari. They prayed this Court to send for the record in case number 20,665, filed by the same parties in the District Court of Humacao, against the minor's father, Pedro Pastrana, to recover temporary alimony; and to revise and annul the proceedings in said court, after the motion for reconsideration of the judgment filed therein, and especially the orders of May 25 and June 19, 1939, ordering that the minor should be sent to the Inmaculada Concepción College at Manatí.

The writ was issued and the parties heard on July 24.

The original record of the case shows that on August 16, 1937, the minor, appearing as aforesaid, sued her father in the district court claiming thirty dollars a month as ali-

mony allowance, alleging that she was four years old and lived with and was under the care and *patria potestas* of her mother, Isabel Díaz, who was a divorcee; that she was insolvent, and depended exclusively upon her father for support, that he only gave her four dollars a week, which amount was insufficient; that the defendant worked in Juncos in a business concern and received a salary of eighty dollars a month, and a percentage of the profits, that amounted to an annual income of around five hundred dollars, which permitted him to deliver the allowance of thirty dollars a month that she needed for food, clothing and medicines.

The court set the first hearing for August 20, 1937, and the defendant answered the preceding day. He alleged that given his salary—sixty dollars a month—and the fact that the plaintiff lives on the only property that he owns —a house worth about a thousand dollars—the seventeen dollars a month that he gives his daughter for her support is all that he can afford.

On October 29, 1937, the second hearing was held, the evidence offered in the first hearing was presented, and on the next November 5 the judge rendered judgment fixing the allowance at twenty-five dollars a month.

The defendant appealed to this Court. The transcript of the record was filed with the Secretary on March 4, 1938. The appeal was decided by judgment of December 16, 1938, affirming that of the lower court (*Pastrana* v. *Pastrana,* 54 D.P.R. 956, *Per curiam* decision, not published in the English edition).

At this stage, on April 27th of this year, the defendant presented to the court a "motion for reconsideration" as follows:

"(1) That this court has rendered judgment ordering the defendant to pay alimony to the plaintiff.

"(2) That on November 26, 1938, Isabel Díaz, the plaintiff's mother, and who was wife of the defendant, became again married to Mr. Carmelo García Rodríguez, and took with her the minor child Ada Bisinia Pastrana, plaintiff herein.

"(3) That Mr. Carmelo García Rodríguez has other children by a former marriage and all live under the same roof with Mrs. Isabel Díaz García and the child Ada Bisinia Pastrana, the plaintiff.

"(4) That Mr. García and his children, as well as his wife Isabel Díaz and the child Ada Bisinia Pastrana, live in the greatest poverty because the aforesaid Mr. García Rodríguez is not working at present, and receives no income or salary of any kind.

"(5) That the child Ada Bisinia Pastrana is not being duly taken care of in the home of Mr. Carmelo García Rodríguez, and the prevailing situation in said home is highly prejudicial to the health and welfare of said child.

"(6) That the defendant in th's case now formally makes the offer to take and convey said child to the defendant's own home, and there duly feed and take care of her, and the defendant wishes to state that he agrees to any provision made by this court as to the custody of the aforesaid child, with exception of her stay in the home of Mr. Carmelo García Rodríguez.

"Wherefore, the defendant respectfully begs this court to reconsider its previous judgment ordering him to pay alimony and definitely to discharge him from further paying said alimony, and to allow the defendant to keep the plaintiff under his custody and to feed her and take care of her education as the court may provide."

The plaintiff objected, and alleged in her behalf:

"(a) That the motion of recons'deration does not set up facts sufficient and meritorious to cause a reconsideration, by this court, of the judgment rendered in the above entitled case.

"(b) That the question relative to the right of election that Section 148 of the Civil Code (1930 ed.) gives to the person bound to give alimony, was decided against the petitioner in the judgment rendered by th's Hon. Court and affirmed by our Supreme Court, as decided in the case of *Capifali* v. *Lloveras*, 33 P.R.R. 768, and hence sa'd decision is final.

"(c) That this court lacks jurisdiction and authority to deprive Mrs. Isabel Díaz of the *patria potestas* over her daughter Ada Bisin'a Pastrana in the present suit for alimony."

On May 22, 1939, the hearing on the motion was held with the assistance of the parties and the introduction of evidence by both, and three days later the judge decided the case as follows:

"The hearing hav.ng been held, and in accordance with the evidence offered, defendant's petit'on may and should be understood as amended so as to request that the alimony be delivered providing for food, medical care and attention, shelter and education of the child enroll.ng her as a boarder in the Inmaculada Concepción College at Santurce, P. R. There is no issue as to the fitness of the College for the aforesaid purposes, and besides, the fact 's known by the court. The plaintiff, however, stated that she preferred that her said daughter should go to said College as a day student, in the same manner that other students do; but to go on living in her company, as has been sa'd before.

"Having appraised the evidence offered by both parties, in detail and as a whole, the court arrives at the following conclusions of fact:

"1.—For reasons may be ·beyond the'r control, the daughters of pla'ntiff's new husband have not received the education that is to be expected in a person who is and has been in the economic situation that plaintiff alleges in favor of her second husband, since the eldest one, who is now 15 years old, and has been forced to stay out of school this last year by doctor's orders, but who, as her father said, was intelligent and studious, is still in the sixth grade, albeit she has failed in none of the previous grades. This shows that the girl was sent to school when nine years old and will finish her grammar school education, probably, when 18 or 19 years, with a ser:ous delay in her education, if compared to the normal. Besides, another of the daughters of plaintiff's new husband, who is now eight years old and who is next to the eldest, will begin her first grade in the next school year, 1939–40; that 's, when 9 years old, if the fathers's purpose of sending her to school the next year is accomplished, also with a great delay in her educative process. Besides this one, the daughter of plaintiff's new husband who follows the second one and who is now 6 years old, does not go to any school yet, and there is no indication as to when she will start.

"2. The unstable and meager income of plaint'ff's new husband, do not permit him and the pla'ntiff, notwithstanding their good will and inclination, to give to defendant's daughter the home comfort she previously enjoyed, when she was alone with her mother at the time the original judgment was rendered, when the mother's care was centered on her alone, in opposition to what happens now, when that care must be devoted to attend her new husband and his four children, because of which she necessarily cannot give her daughter the same attention and solicitude as before; it being also evident that there may ar:se, as in the majority of cases, serious conjugal disagree-

ments, because of the friction that undubitably occurs with great frequency between the children of different marriages, when two divorced persons, who have children get married and share a common home. Those disagreements are beginning to show up in this case and the continuation of the same will not be of advantage to defendant's daughter. Besides th's, it is indisputable that plaintiff's new husband, as head of the family, will impose in the home his personal notions about the conduct, education, and the solution of quarrels between the different children, in all of which the father, defendant herein, is necessarily interested; he is contributing $25.00 every month, and it has not been just'fied that said sum is spent exclusively on her.

"These and other considerations of like nature, which arise from the evidence admitted and appra'sed by the court, lead to the conclusion that the welfare of Ada-Bisinia Pastrana Díaz advises that she be entered, as boarder, in an adequate school for her better care and education, and to which her legitimate parents, plaintiff and defendant herein, shall have access, to continue family relations with her. In v'rtue thereof, and because the circumstances which governed at the time judgment was rendered in this case have varied, which judgment by its nature, is never final, and is subject to change in accord with the new condition of the alimony giver and the recipient, the court believes that said judgment should be modified so as to provide that the child, from now on, will receive her al'mony, in the full legal meaning, by her enrollment in the Inmaculada Concepción College at Santurce, or in any other that in its stead the court may provide, and the expenses of said boarding shall be paid by the defendant herein, although the same amount to a sum greater than that originally imposed in the judgment here modified, to which he acquiesced at the hearing; under the condition that the child will not be transferred to other school, nor taken out of the same, for any reason, by request of the parents or of anyone else, without an order of this court, and the parents may v'sit her at said school, in accordance with the rules of the institution, until further order of this court."

On June 6, 1939, the defendant informed the court that he would not be able to obtain the admittance of the minor in the specified College, and asked it to order that she be enrolled in the Inmaculada College, at Manatí. Plaintiff's attorney, on being notified of the motion, stated his opposition in writing at the bottom of the same.

Without a hearing the judge decided, on June 19, 1939, as follows:

He narrates, under the first two Whereases, the antecedents of the case, and goes on:

"Whereas; the undersigned Judge made a trip to the aforesaid Inmaculada Concepción College at the City of Manatí, and after a personal inspection of the same and after having obtained all the necessary information as to the physical and spiritual care and the academic and moral education of the girls who live and study therein, he is fully convinced that said College is a proper place for the care, instruction and education of Ada Bisinia Pastrana;

"Therefore: the enrollment of the aforesaid child in the aforesaid educational institution of Manatí, is hereby authorized, until further order of this court, and all the other provisions of the order of this court of May 25 of the current, year, to which this is an addition, shall stand."

The petitioners in their request for a *certiorari* maintain:

"That the District Court of Humacao lacked authority and jurisdiction to issue the orders mentioned in paragraphs eight and nine above, for the following reasons:

"(a) Because said orders are equivalent to a judgment whereby the petitioner Isabel Díaz is deprived of the *patria potestas* over her daughter Ada Bisinia Pastrana, in violation of the provision of Section 164 of our Civil Code.

"(b) Because said orders decide questions alien to the main action of alimony.

"(c) Because the said orders illegally deprive the minor Ada Bisinia Pastrana of her liberty, because once she enters the Inmaculada Concepción College at Manatí, she cannot be taken out of it under any circumstance unless there is an order of the District Court of Humacao."

And they argue in their brief:

"The orders of which we complain deprive forever Isabel Díaz of the custody of her minor daughter Ada Bisinia Pastrana, which is equivalent to saying that she is practically deprived of *patria potestas* over said minor.

"If on account of Isabel Díaz having married again facts have arisen that require, for the welfare of the minor, that said lady be

deprived of *patria potestas* over her, the law, foreseeing such cases, has provided the rules to be followed. To that effect we have Section 164 of the Civil Code that says as follows:

"Section 164.—(*As amended by Act No. 95, approved May 15, 1931, pages 577, 579.*—'Upon dissolution of the marriage bond for any reason, the father or mother who remarries or shall have remarried, shall lose the *patria potestas* over his or her children during the continuance of such marriage, provided it is so ordered, in declarative proceedings, by the District Court of the district wherein the father or mother resides, on complaint of any of the persons called upon to exercise the tutorship by operation of law, and provided the Court after hearing the proper evidence, deems it expedient for the benefit of the minor; *Provided,* That the father or mother, if any, already deprived of the *patria potestas* may also petition for the appointment of a proper tutor.' "

In opposition the defendant invokes various decisions of this Supreme Court to uphold the authority of the court to act as it did. We shall refer to two, to wit: *Puigdollers* v. *Monroig,* 14 P.R.R. 756, where it was held, copying from the syllabus, that "where a district court grants alimony it has jurisdiction to set aside or modify its order so doing, whenever in accordance with the provisions of Section 177 of the Civil Code the circumstances justify such action, and such an order may be sought by means of a motion made during the principal suit, without the necessity of filing a separate complaint for the purpose." And *Chardón* v. *District Court,* 45 P.R.R. 604, where it was held, also copying from the syllabus, that:

"A court, after entering a decree for divorce, retains jurisdiction thereafter to make any necessary or proper orders concerning the custody of the children or to modify from time to time, according to changing circumstances, such orders previously made.

"A district court may, on motion made after judgment in a suit for divorce, make any order concerning the custody of children that might be made in an independent action brought for that purpose.

"The parental *patria potestas* is subject always to the exercise by the courts of the power of *parens patriae,* and the controlling factor in the exercise of that power is the welfare of the child or children."

Taking in consideration said holdings, strengthened by the provision of the rule of law cited by petitioners—Section 164 of the Civil Code—we do not think that it can be held that the district court lacked jurisdiction in the matter.

It being so, and notwithstanding that the order was issued in the suit for alimony and not in that for divorce, as one was a sequel of the other, we are estopped from going into the facts in this *certiorari* proceeding. An appeal has been filed and if it is duly prosecuted it will be within that ordinary remedy that we shall be able to amply decide whether the pleadings and evidence justify the judgment.

However, the error of procedure committed by the court in issuing its last order,—that of June 19, 1939—seems so clear to us that it may and can be annulled within this *certiorari* proceeding.

It is an essential amendment. It is not the same thing to take a five or six year old girl from the home of her mother to place her in a school in the same city than to put her in another that is in a far-away town, especially when the mother absolutely lacks means or resources.

In the first college the mother could visit her frequently, both feel close together; in the second the separation would be almost total. And it is impossible to adopt a measure of that kind without hearing the mother, especially when she gives notice of her opposition on being served with the motion.

The order of June 19, 1939 being annulled, after setting a day for hearing the parties on the motion of June 6, the district judge will have a greater opportunity for acting conscientiously, to decide whether it would not perhaps be better for the welfare of the child, still so young, that she should go, as the mother suggested at the hearing of May 22, 1939, as a day student to the Inmaculada College in Santurce and to go on living, with a reasonable allowance, with her mother; in that manner she may receive besides the light of education, the affection, care and mother love that are so necessary, especially at that age.

.418

Acting in cases as this, the judge must not forget how deep is the sad memory left forever in the soul of a child by forced separation from his parents. To justify said measure on the grounds of the welfare of the child the case must be a grave and serious one, where there is the fear that he may receive corrupting examples or be subject to a cruel deppressing rule, and here from the motion of reconsideration and the evidence as it was appraised by the trial judge himself, such situations do not arise. Only poverty, that demands privation but ·does not necessarily harm but sometimes dignifies, is what can be seen, and also the lack of a proper orientation as to education matters, which could perhaps be corrected in the aforesaid manner.

There is nothing in the record that shows prejudice on the part of the trial judge; but on the contrary, a desire to reach a proper solution; hence a new consideration of the matter by him constitutes a guarantee of justice for all the parties in the case.

By· virtue thereof, the aforesaid order of June 19, 1939, is reviewed and annulled, and the case is remanded for further proceedings according to law.

Mr. Justice Travieso took no part in the decision of this case.